# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Honorable Marcia S. Krieger

Civil Action No. 12-cv-01125-MSK

**ELIZABETH M. TORRES,**

    **Plaintiff,**

v.

**CAROLYN W. COLVIN, Acting Commissioner, Social Security Administration,**

    **Defendant.**[1]

## OPINION and ORDER

**THIS MATTER** comes before the Court on Plaintiff Elizabeth M. Torres' appeal of the Commissioner of Social Security's final decision denying her application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-33, and Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83c. Having considered the pleadings and the record, the Court

**FINDS** and **CONCLUDES** that:

### I.    Jurisdiction

Ms. Torres filed a claim for disability insurance benefits pursuant to Title II and supplemental security income pursuant to Title XVI. She asserted that her disability began on May 4, 2009. After her claims were initially denied, Ms. Torres filed a written request for a

---

[1] At the time Ms. Torres filed her appeal, Michael J. Astrue was the Commissioner of Social Security. Carolyn W. Colvin is substituted as the Defendant in this action to reflect her designation as Acting Commisioner of Social Security, effective February 14, 2013.

hearing before an Administrative Law Judge ("ALJ").  This request was granted and a hearing was held on August 9, 2010.

After the hearing, the ALJ issued a decision with the following findings: (1) Ms. Torres met the insured status requirements of the Social Security Act through December 31, 2014; (2) she had not engaged in substantial gainful activity since May 4, 2009; (3) she had three severe impairments: status post compression fracture at T-11, arthritis of the left knee, and rheumatoid arthritis; (4) none of these impairments, considered individually or together, met or were equivalent to one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1 ("the Listings"); (5) Ms. Torres had the Residual Functional Capacity ("RFC") to perform the full range of sedentary work involving lifting no more than ten pounds at a time, standing and walking two hours during an eight hour workday, and sitting six hours during an eight hour workday; (6) she was unable to perform her past relevant work; and (7) she was not disabled because she was able to perform jobs that exist in significant numbers in the national economy.

The Appeals Council denied Ms. Torres' request for review of the ALJ's decision. Consequently, the ALJ's decision is the Commissioner's final decision for purposes of judicial review.  *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).  Ms. Torres' appeal was timely brought, and this Court exercises jurisdiction to review the Commissioner of Social Security's final decision pursuant to 42 U.S.C. § 405(g).

**II.    Issues Presented**

Ms. Torres raises five challenges to the Commissioner's decision: (1) the ALJ's RFC finding is not supported by the medical evidence of record; (2) the ALJ improperly rejected the opinion of the treating physician; (3) the ALJ failed to properly assess Ms. Torres' mental limitations at Step 2; (4) the ALJ failed to properly assess the opinion of Ms. Luna; and (5) the

ALJ failed to properly assess Ms. Torres' obesity. The Court addresses each of these issues in turn.

### III.     Material Facts

Having reviewed the record in light of the issues raised, the material facts are as follows. Ms. Torres was involved in an automobile accident in May 2009 which resulted in a brief hospitalization and precipitated a number of health problems for which Ms. Torres sought treatment.

Beginning in October 2009, Dr. Franco was Ms. Torres' treating physician. Ms. Torres visited Dr. Franco over thirty times between October 2009 and July 2010. During these visits, Ms. Torres consistently complained of arthritis pain, knee pain, and depression. Additionally, she was treated for diabetes and was prescribed several medications, including pain medication and Prozac. In June 2010, Dr. Franco increased Ms. Torres' Prozac prescription to 60 mg due to increased depression. This increase corroborates a prescription chronology from Valley Wide Health Systems, which indicates that Ms. Torres had been prescribed 20 mg Prozac in October 2009, 40 mg of Prozac in January 2010, and 60 mg of Prozac in June 2010.

Based on her treatment relationship with Ms. Torres, Dr. Franco completed a functional capacity evaluation form in July 2010. Dr. Franco diagnosed Ms. Torres as suffering from rheumatoid arthritis, diabetes, depression, and a left knee meniscus tear. Dr. Franco further opined that Ms. Torres was unable to sit for more than thirty minutes at a time, stand for more than fifteen minutes at a time and one hour per day, and walk more than five minutes at a time. Dr. Franco also indicated that Ms. Torres should not lift more than ten pounds occasionally and placed restrictions on her ability to climb stairs and ladders, bend, squat, stoop, and use her

hands. She offered concluded that Ms. Torres was in constant pain caused by rheumatoid arthritis such that she was unable to perform a full range of sedentary work.

Ms. Torres was also evaluated by a number of consulting physicians and psychologists as part of her disability application process. In January 2010, Dr. Campbell performed a physical examination of Ms. Torres. Dr. Campbell diagnosed Ms. Torres as suffering from left knee osteoarthritis, meniscus degeneration, arthralgia, chronic back pain with multilevel degenerative disk disease, possible T-11 fracture, mild facet arthropathy and disk dessication at L5-S1, chronic neck pain, and severe obesity. Dr. Campbell opined that Ms. Torres was limited to walking and standing no more than twenty minutes at a time and three hours per eight hour workday; lifting and carrying no more than ten pounds for three hours per day; limited bending, stooping, reaching above shoulder level, forceful grip, and manipulation of fine objects; no squatting, walking on uneven surfaces, or climbing ladders or step stools; but no limits on daily activities.

Dr. Glasco and Dr. Madsen also examined Ms. Torres in 2010. Dr. Glasco, a physician, interviewed Ms. Torres and concluded that she had moderate limitations with regard to activities of daily living, maintaining social functioning, and maintaining concentration, persistence or pace. He also opined that Ms. Torres was able to follow simple instructions, sustain ordinary routines and make simple work-related decisions but that she should have minimal contact with supervisors and coworkers and no interaction with the general public. Dr. Madsen, a psychologist, performed a psychological evaluation on Ms. Torres in January 2010 and concluded that she suffered from depression and impaired intellectual functioning and "would have problems with a regular work schedule, focusing and concentrating on work, relating to peers, co-workers, supervisors, and the general public."

Dr. Ketelhohn reviewed Ms. Torres' medical record in February 2010 and concluded that she was limited to lifting no more than twenty pounds, standing and walking no more than four hours per eight hour workday, sitting no more than six hours in an eight hour workday, should never crawl or climb ladders, ropes, or scaffolds, and should only occasionally climb ramps and stairs, stoop, kneel, or crouch.

Beginning in February 2007 and continuing throughout 2009 and 2010, Ms. Torres lived in an apartment community occupied by seniors and disabled adults. According to Ms. Luna, who owned and operated this community and interacted with Ms. Torres daily, Ms. Torres began exhibiting problems after her car accident in May 2009. According to a letter she wrote in July 2010, Ms. Luna noticed that Ms. Torres developed depression, problems getting out of bed and navigating her apartment, as well as social interaction problems. Ms. Luna wrote that Ms. Torres "definitely has medical disabilities that would not allow her to maintain a regular job or even a part time job."

**IV.   Standard of Review**

Judicial review of the Commissioner of Social Security's determination that a claimant is not disabled within the meaning of the Social Security Act is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). On appeal, a reviewing court's job is neither to "reweigh the evidence nor substitute our judgment for that of the agency." *Branum v. Barnhart*, 385 f.3d

1268, 1270, 105 Fed. Appx. 990 (10th Cir 2004) (*quoting Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).

When evaluating medical opinions, a treating physician's opinion must be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2).[2] The ALJ must give specific and legitimate reasons to reject a treating physician's opinion or give it less than controlling weight. *Drapeau v. Massanari*, 255 F.3d 1211 (10th Cir. 2001). Even if a treating physician's opinion is not entitled to controlling weight, it is still entitled to deference and must be weighed using the following factors:

> 1) the length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; 3) the degree to which the physician's opinion is supported by relevant evidence; 4) consistency between the opinion and the record as a whole; 5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and 6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins*, 350 F.3d at 1300-01 (citation omitted); § 404.1527.

Having considered these factors, the ALJ must give good reasons in the decision for the weight assigned to a treating source's opinion. § 404.1527(c)(2). The ALJ is not required to explicitly discuss all the factors outlined in § 404.1527. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). However, the reasons the ALJ sets forth must be sufficiently specific to make clear to subsequent reviewers the weight the ALJ gave to the treating source's medical opinions and the reason for that weight. *Watkins*, 350 F.3d at 1301.

---

[2]  All references to the Code of Federal Regulations (C.F.R.) are to the 2012 edition. Hereafter, the Court will only cite the pertinent Title II regulations governing disability insurance benefits, found at 20 C.F.R. Part 404, e.g. § 404.1527. The corresponding regulations governing supplemental security income under Title XVI, which are substantively the same, are found at 20 C.F.R. Part 416.

The medical opinion of an examining physician or psychologist is generally given more weight than the medical opinion of a source who has not examined the claimant. The ALJ should evaluate an examining physician's medical opinion according to the relevant factors outlined in § 404.1527(c), including evidentiary support, consistency with the record, the examining physician or psychologist's specialty, and other relevant factors. As with opinions from treating sources, the ALJ must give good reasons for the weight given an examining source's opinion, but is not required to specifically discuss every factor found in § 404.1527(c).

Although information and opinions from non- professionals, such as friends, family, or neighbors, cannot alone establish the basis for a medical impairment, information from "other sources may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03p. "[The ALJ] generally should explain the weight given to opinions from [other sources], or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning." *Id*. When evaluating an opinion from a non-professional source, it is appropriate for the ALJ to consider the nature and extent of the relationship with the claimant, whether the opinion is consistent with other evidence, and any other factors that tend to support or refute the opinion. *Id*.

Only medical opinions are given special consideration. § 404.1527(d)(3). Opinions on issues reserved for the Commissioner are not medical opinions, even if they come from a treating physician. § 404.1527(d). These include opinions that a claimant is disabled or unable to work. § 404.1527(d)(1).

Finally, SSR 02-1p both defines obesity and outlines how obesity is considered in the disability evaluation process. Under SSR 02-1p, obesity is considered at Steps 2, 3, 4, and 5, as

applicable. If obesity is found to be a severe impairment at Step 2, the functional limitations of obesity should be incorporated into the ALJ's RFC finding. SSR 02-1p. The ALJ must explain how he or she reached any "conclusions on whether obesity caused any physical or mental limitations." *Id*. The "ALJ may 'not make assumptions about the severity or functional effects of obesity combined with other impairments,' but rather, must 'evaluate each case based on the information in the case record.'" *DeWitt v. Astrue*, 381 Fed.Appx. 782, 785 (10th Cir. 2010).

### V.     Discussion

#### A.  Dr. Franco and Dr. Campbell's Opinions as to Physical Limitations

The Court begins with Ms. Torres' first and second challenges. Underlying both are the basic contentions that the ALJ did not properly evaluate the respective opinions of Ms. Torres' treating physician, Dr. Franco, or evaluating physician, Dr. Campbell. Both Dr. Franco and Dr. Campbell's opinions were given no weight by the ALJ. The ALJ gave Dr. Franco's July 2010 opinion no weight because it was inconsistent with and not supported by the objective medical evidence. The ALJ gave Dr. Campbell's opinion no weight because it was not supported by objective medical findings.

Dr. Franco, Ms. Torres' treating physician, saw Ms. Torres several dozen times in 2009 and 2010. Based on these visits, Dr. Franco diagnosed Ms. Torres with arthritis and depression, among other ailments, and concluded that Ms. Torres had functional limitations as a result. These included limits on sitting, standing, walking, lifting, and using her hands. Dr. Campbell, a consulting physician, examined Ms. Torres in January 2010 and diagnosed her with degenerative disk disease and arthralgia. Dr. Campbell also concluded that Ms. Torres had functional limits, including limits on standing, walking, lifting, bending, reaching, and using her hands. As noted, the ALJ rejected both these opinions, giving them no weight.

The Court begins with the observation that despite the fact that the opinons of these doctors, one a treating physician and one a consulting physician, are in substantial agreement as to the severity of Ms. Torres' functional limitations, the ALJ gave them no weight. Although it is possible that two such opinions could be fundamentally flawed, the justification for rejecting them was a cursory dismissal that they were not supported by objective evidence and inconsistent with the record. The ALJ's decision identifies no specific inconsistency between the observations, findings and assessment and treatment records or other evidence in the record. This lack of explication precludes the Court from understanding and evaluating the ALJ's determination, and therefore constitutes error.

In addition, although the ALJ's decision recites that Dr. Franco's opinion was given no weight, such statement is contradicted by other statements suggesting that some part of it was relied upon by the ALJ. For example, the ALJ states "[a]lthough Dr. Franco's opinions as to [Ms. Torres'] abilities are more restrictive, some of her findings are consistent with the residual functional capacity herein."

The same is true with regard to Dr. Campbell's opinion. On the one hand, the ALJ specifically assigned Dr. Campbell's opinion no weight, citing a lack of support in the objective medical evidence for "the level of limitations described [in Dr. Campbell's opinion]." On the other hand, the ALJ also noted that "some of [Dr. Campbell's] findings are consistent with the [RFC finding] herein."

### B. The ALJ's Step 2 Finding as to Mental Limitations

A similar problem is found in the ALJ's Step 2 findings. At Step 2, the ALJ found that Ms. Torres' depression was not a severe impairment. In making this finding, the ALJ rejected the medical opinions of Dr. Glasco and Dr. Madsen.

Both Dr. Glasco and Dr. Madson were consulting medical professionals. Dr. Glasco, a physician, examined Ms. Torres and found that based on depression and mental limitations, she was limited to a moderate degree with regard to activities of daily living, maintaining social functioning, and maintaining concentration, persistence or pace, and could only follow simple instructions, sustain ordinary routines, and make simple work-related decisions and should have minimal contact with supervisors, coworkers, and not work with the general public.  Dr. Madson, a psychologist, evaluated Ms. Torres also finding that she suffered from depression and impaired intellectual functioning. He also opined that she would have problems with a consistent work schedule, concentrating at work, and relating to co-workers and the general public.

The ALJ rejected Dr. Glasco and Dr. Madsen's opinions for a lack of support in the record.  As noted earlier, this can be a valid reason for rejecting the opinion of an examining physician or psychologist.  *See* § 404.1527(c)(3). The two opinions are corroborating, and furthermore there is evidence in Ms. Torres' treatment records that she was diagnosed and treated for depression with Prozac. According to a prescription chronology from Valley Wide Health Systems, Ms. Torres was initially prescribed 20 mg of Prozac in October 2009.  This dose was increased to 40 mg in January 2010 and 60 mg in June 2010.  This final notation is corroborated by Dr. Franco's treatment notes from June 2010, in which she notes that Ms. Torres' Prozac dosage was increased to 60 mg due to "increasing depression."  This evidence tends to show that Ms. Torres' depression symptoms were increasingly severe.  As such, this evidence supports Dr. Glasco and Dr. Madsen's opinions, as well as Ms. Torres' assertion that her depression was a severe impairment. Thus Court finds that the ALJ's rejection of these opinions for lack of support in the record is error.

### C. Ms. Luna's Opinion

In the decision, the ALJ found that "significant weight cannot be given" to Ms. Luna's opinion. The ALJ based this finding on Ms. Luna's lack of medical training, which limited her ability to make "exacting observations as to dates, frequencies, types and degrees of medical signs and symptoms, or of the frequency or intensity of unusual moods or mannerisms." As a result, according to the ALJ, "the accuracy of the information [from Ms. Luna] is questionable." The ALJ also found that Ms. Luna was not a "disinterested third party" due to her relationship with Ms. Torres. The ALJ found that Ms. Luna's opinion would "tend to be colored by affection for the claimant and a natural tendency to agree with the symptoms and limitations [Ms. Torres] alleges." Finally, the ALJ found that Ms. Luna's opinion "is simply not consistent with the preponderance of the opinions and observations by medical doctors in this case."

Ms. Torres disagrees with the ALJ's finding. She argues that the ALJ did not clearly state the weight given Ms. Luna's opinion. Furthermore, Ms. Torres argues that Ms. Luna was entitled to give a lay opinion despite her lack of medical training, there was no evidence she was biased in her opinion, and the preponderance of medical opinions actually supported her opinion.

Turning to Ms. Torres' first argument, the ALJ's finding that "significant weight cannot be given" to Ms. Luna's opinion was sufficiently specific for this Court to review. It is clear that the ALJ gave little weight to this opinion, as the ALJ not only did not give significant weight to the opinion, but also indicated that Ms. Luna's report did "not establish that [Ms. Torres] is disabled."

Although the weight given to Ms. Luna's opinion was sufficiently specific for review, the reasons underpinning that finding were invalid. The ALJ found that Ms. Luna did not have the medical qualifications to make precise medical findings. However, a review of her opinion does

11

not reveal purely technical opinions of a type reserved for a medical professional.  Even a person without a medical or professional relationship with Ms. Torres, like Ms. Luna, can offer an opinion regarding the severity of Ms. Torres' impairments and how those impairments affect her ability to function.  *See* SSR 06-03p; § 404.1513.  In her July 2010 letter, Ms. Luna noted that Ms. Torres suffered from depression, left her apartment less and less, required frequent checkups, and had problems getting out of bed and socializing, all of which would interfere with work.  Ms. Luna based these observations on daily interaction with Ms. Torres.  Despite the ALJ's conclusion to the contrary, none of the above opinions required medical or other professional training.  Rather, these are reasonable observations of a person in frequent contact with Ms. Torres.

Turning to the ALJ's second justification, there is no evidence in the record supporting the ALJ's conclusion that Ms. Luna's opinion was biased due to her daily interaction with Ms. Torres.  Consequently, the ALJ's reliance upon an assumed bias is an invalid basis to dismiss Ms. Luna's opinion.

The ALJ's final reason for assigning Ms. Luna's opinion no significant weight was its inconsistency "with the preponderance of the opinions and observations by medical doctors in this case."  This assertion is also not supported by the record.  Among the universe of medical opinions in this case, all but one doctor who treated or examined Ms. Torres opined that she had significant limitations due to either mental or physical impairments.  The lone dissenter was from Dr. Ketelhohn, a consulting physician, and he offered an opinion only on Ms. Torres' physical limitations, not her mental limitations.  Ms. Luna's opinion was not inconsistent with a majority of the medical opinions in this case.  To the contrary, those doctors and psychologists who offered an opinion regarding the impact of Ms. Torres' depression, which was the impairment

12

Ms. Luna addressed, consistently reiterated functional impacts from depression that were very similar to those Ms. Luna noted herself.  For example, both Dr. Glasco and Dr. Madsen indicated that Ms. Torres would have problems in social functioning due to depression.  Contrary to the ALJ's finding, Ms. Luna's opinion was, in fact, consistent with the preponderance of the medical opinions in the record.

### D.  The ALJ's Consideration Of Obesity

At Step 2, the ALJ found that obesity was a severe impairment:

> The undersigned has given consideration to [SSR 02-1p], which instructs adjudicators to consider the effects of obesity not only under the listings, but also when assessing a claim at other [Steps], including when assessing an individual's [RFC].  When obesity is identified as a medically determinable impairment, consideration will be given to any functional limitations resulting from the obesity in the [RFC] assessment in addition to any limitations resulting from any other physical or mental impairment identified.  In this case, obesity is a severe limitation in combination with [Ms. Torres'] musculoskeletal conditions as it further impairs the claimant's ability to perform work-related activity.

Ms. Torres argues that, although the ALJ found that obesity was a severe impairment at Step 2, the ALJ failed to explain how obesity was accounted for in the RFC finding.  In response, the Commissioner argues that the ALJ's Step 2 reference to functional limitations caused by obesity was an adequate analysis of obesity under SSR 02-1p.

In this case, the ALJ specifically mentioned at Step 2 the requirement that the functional limitations resulting from obesity be considered when formulating the RFC finding.  The ALJ stated that obesity was a severe limitation that further impaired Ms. Torres' ability to perform work-related activity.  However, the ALJ did not explain this conclusion in accordance with SSR 02-1p (the ALJ must explain how he or she reached any "conclusions on whether obesity caused any physical or mental limitations").

Additionally, none of the evidence the ALJ cited in formulating the RFC finding includes limitations derived from Ms. Torres' obesity.  The ALJ rejected all the medical opinions that considered Ms. Torres' obesity, and the one medical opinion the ALJ did not reject, Dr. Ketelhohn's, did not mention obesity.  Although the ALJ limited Ms. Torres to sedentary work, this finding does not reflect how the ALJ incorporated obesity into the RFC finding.  *See Dewitt*, 381 Fed.Appx. at 785.  On remand, the ALJ should explain whether and to what extent obesity further impairs Ms. Torres' ability to perform work-related activity.

For the forgoing reasons, the Commissioner of Social Security's decision is **REVERSED**, and the case is **REMANDED.**  The Clerk shall enter a Judgment in accordance herewith.

DATED this 24th day of August, 2013

**BY THE COURT:**

*[signature: Marcia S. Krieger]*

Marcia S. Krieger
United States District Judge